UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                              )<br>)<br>LUIS SANTIAGO                         ) | CRIMINAL NO.<br>3:02CR4(AWT)<br><br>July 15, 2005 |

## DEFENDANT'S CROSBY BRIEF

Defendant Luis Santiago submits this brief in accordance with the Court's Endorsement Order, dated April 13, 2005, and the remand ordered by the Court of Appeals, *see United States v. Santiago*, 384 F.3d 31 (2004).

## FACTUAL BACKGROUND

Defendant's April 2, 2002 sentencing focused on the allegations against him. Defendant's story is not, however, limited to the events to which he pled guilty and the enhancements subsequently found by the Court. Defendant is a family man with employable skills and who has provided service to his country. He also faces a crushing drug addiction.

Defendant has close ties to his mother and her husband, living with them at the time of his arrest. See Presentence Report, dated May 31, 2002 ("PSR"), at ¶¶ 76, 84; Letter of Elsa Rodriquez, dated Apr. 3, 2002. He maintains these relationships, as attested to by the routine attendance of his mother and step-father at multiple hearings, despite the absence of his biological father in his life, both as an adult and during his formative years. When Defendant was just about one year old, his father went to prison. PSR, ¶ 74. He visited with his father only a few times between the ages of 16 and 21. *Id*. Defendant is uncertain of his father's whereabouts, believing that he lives in upstate New York. *Id*.

Defendant also maintains a relationship with his ex-wife, from whom he divorced due to her infidelity and with whom he has a child. *Id.*, ¶¶ 78-79; Letters from Denise Santiago (ex-wife) and Richard Spano (former father-in-law), dated May 21, 2002. Not only has he been a father to his own child, but Defendant also helped to raise his ex-wife's three older children, who do not know their biological father. PSR, ¶ 78.[1] Defendant believes that their father is incarcerated. *Id.*

Focusing on Defendant's criminal conduct also overlooks his work history and service to his country. Defendant was employed as an auto body technician from April 1999 through November 2000, earning $360/week, and previously worked as a handyman. *Id.*, ¶ 87. His former employer at the auto shop expressed willingness to consider rehiring him (he had been terminated due to an absence of work). *Id.* Just prior to his arrest, Defendant repaired cars for a family friend, who is willing to employ Defendant when he is released. *See* Fourth Addendum to PSR.

From 1988 to 1999, Defendant served in the Army National Guard. PSR, ¶ 86. He served as a supply officer. *Id.* He was discharged honorably, with the rank of Private First Class. *Id.*

Defendant also has a drug addiction. He started using marijuana at the age of 19, using it on a regular basis. PSR, ¶ 81. In his late 20s, Defendant experimented with cocaine, using it "on and off" for a few months, and then escalating to daily usage. *Id.* Quickly, his drug usage became out of control. *Id.*, Letter from Luis Santiago.

---

[1] Numerous letters included with the PSR emphasize Defendant's parenting skills with his son and his ex-wife's children. *See* Letters from Michael Stephen and Jennifer Paladino, dated Apr. 2, 2002, Elsa Rodriquez and Howard Carty, dated Apr. 3, 2002, Evelyn Delgado, dated Apr. 4, 2002, and Belma Figueroa, dated Apr. 23, 2005.

At the time of his arrest, he was using four to five grams of cocaine daily, plus seven to eight ephedrine tablets. *Id*. In addition, during the three years leading to his arrest, Defendant also used Oxycontin from time to time, and began taking steroids. PSR, ¶ 81. Defendant's typical day consisted of cocaine and Oxycontin usage during the day, and taking Zanax to counter the resulting anxiety attacks and obtain rest. PSR, ¶ 82. Defendant has not received any drug counseling. *Id.*

Subsequent to his arrest, Defendant agreed not to oppose forfeiture proceedings concerning numerous assets, including two accounts with Morgan Stanley Dean Witter, three vehicles, a Harley Davidson motorcycle, four ATV's, jewelry, and a race car motor. Id., ¶ 5.

## PROCEDURAL HISTORY

On April 10, 2002, Defendant pled guilty to one count of conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine from August to December 2001 in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)B)(ii), and 846. The Court made the following findings as to Defendant's Sentencing Guideline calculation:

| | |
|---|---|
| Base Offense Level | 26 |
| Role in the offense (U.S.S.G. § 3B1.1(c)) | +2 |
| Possession of a weapon (U.S.S.G. § 2D1.1(b)(1)) | +2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1.(b)) | -3 |
| Adjusted Offense Level | 27 |

With a Criminal History Category of II, the resulting Guideline range was 78-97 months imprisonment. Responding to the Government's motion for upward departure under U.S.S.G. 5K2.6 and finding that Defendant used a firearm to shoot Juan Arroyo in the

commission of the conspiracy, the Court made a three-level departure, resulting in an offense level of 30 and a Guideline range of 108 to 135 months imprisonment. On May 27, 2003, after further argument, the Court sentenced Defendant to 108 months.

Thereafter, Defendant appealed. *See United States v. Santiago*, 384 F.3d 31 (2004). Defendant argued that the Court improperly applied the weapons enhancement and inappropriately granted the upward departure, including the extent of the departure. *See id*. at 33. The Court of Appeals disagreed, but remanded the matter so that the District Court may amend the written judgment and conviction order to set forth in writing its reasons for granting the section 5K2.6 upward departure. *See id*. at 37-38. The Court of Appeals retained jurisdiction to hear Defendant's challenge to the departure once the record has been supplemented. *See id*. at 37. The entirety of the Court of Appeal's opinion was subject to the U.S. Supreme Court's decision in *United States v. Booker*, No. 04-014, *cert. granted*, Aug. 2, 2004. *See Santiago*, 384 F.3d at 37.

This matter is now before this Court for the issue of "whether the court should have imposed a nontrivially different sentence if it had understood sentencing law as subsequently explained by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005)." Endorsement Order, dated Apr. 13, 2005.

## ARGUMENT

I. ***BOOKER* HAS SHIFTED SENTENCING ANALYSIS TO INCLUDE REVIEW OF FACTORS NOT GIVEN SIGNIFANT, IF ANY, CONSIDERATION BY THE SENTENCING GUIDELINES**

Since the date of sentencing, the United Supreme Court has held unconstitutional the mandatory requirement of following the Sentencing Guidelines. *United States v. Booker*, 125 S.Ct. 738 (2005). *Booker* effectively reduces the Guidelines from a mandatory dictation

of a sentence to mere advice. *See id.* at 738 (Stevens, J. dissenting in part.) (explaining that Guidelines now "are nothing than a suggestion that may or may not be persuasive to a judge when weighed against the numerous other considerations listed in 18 U.S.C.A. § 3553(a)"). The Guidelines are simply now one of the several factors a court should "consider" in determining a sentence. 19 U.S.C § 3553(a)(2). Nothing in 18 U.S.C. § 3553(a) or the majority opinions in *Booker* suggest that the Court should give the Guidelines *any* priority over the other factors listed in section 3553(a). *See id.* at 790 (Scalia, J. dissenting in part). To give the Guidelines any sort of "presumptive" correctness or "weighted" consideration would in effect resurrect them to the level of de facto "mandatory," which obviously runs afoul of *Booker*. Consequently, the Court can now give the sentence it deems appropriate without fear that it necessarily is running afoul of the Guidelines by sentencing a defendant outside the Guideline range. *United States v. Crosby*, 397 F.3d 103 (2d. Cir. 2005).

In short, *Booker* has dethroned the Sentencing Guidelines, and re-established section 3553(a) as the Court's benchmark for fashioning a particular sentence. As a result, analysis must start with the following factors, including the initial guiding principle intended to ensure that the Court does not overly punish the defendant, given all the characteristics of the case and the defendant himself:

> (a) The court shall impose a sentence <u>sufficient, but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> 
> (1) the nature and circumstances of the offense and the history and <u>characteristics of the defendant</u>;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

5

> (C) to protect the public from further crimes of the defendant; and
> (D) to <u>provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing] guidelines--
> . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) <u>the need to provide restitution to any victims of the offense</u>.

18 U.S.C. § 3553(a) (emphasis added).

## II. THE COURT SHOULD HAVE IMPOSED A NONTRIVIALLY DIFFERENT SENTENCE HAD IT SENTENCED DEFENDANT IN A POST-*BOOKER* WORLD

Prior to *Booker*, the Court was not permitted to consider those factors highlighted above, except as to issues of supervised release, unless their presence was extraordinary. *See, e.g*., U.S.S.G. §5H1.4. Accordingly, Defendant did not emphasize, nor did the Court have an opportunity to consider, Defendant's roles in his family, including the lives of his ex-wife's children, his employability, his service to his country, or his drug addiction. The Court also did not have an opportunity to consider the de-facto restitution made by Defendant. Now, Defendant should have an opportunity to present to the Court the full picture of himself, his life, and the context of the crime for which he was sentenced, and in so doing, receive a shorter – and thus nontrivially different – sentence.[2]

### A. Defendant's Family Ties Would Have Been Considered

Section 5H1.6 states "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." The 2003 Sentencing Manual, while not applicable, offers guidance in its Application Notes, directing the Court to consider

whether the "defendant's caretaking . . . support [is] irreplaceable to the defendant's family." Section 5H1.6, app. note 1(B)(iii).

Here, Defendant has had a critical role in the life of his child, as well as his ex-wife's children, whose father is not present. *See* PSR, ¶ 78-79 and numerous letters cited *supra*, n.1. Defendant also has close relationships with his mother and step-father. *See id.*, ¶¶ 76, 84. While these facts may not have merited consideration under a Guideline regime, 18 U.S.C. § 3553(a) requires the Court to give these factors weight and should lead to a lower sentence. *See* 18 U.S.C. 3553(a)(1) (requiring consideration of "history and characteristics of the defendant").

### B. Defendant's Skills and Interests In Improving Himself and His Military History Would Have Been Considered

The Guidelines are equally dismissive of considering a defendant's education and vocational abilities, in contrast to 18 U.S.C. 3553(a). *Compare* U.S.S.G. § 5H1.2 ("Education and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range") *with* 18 U.S.C. 3553(a)(1) and (2)(D) (requiring consideration of "history and characteristics of the defendant" and the need to "provide the defendant with needed educational or vocational training . . . in the most effective manner"). Defendant, however, has employable skills and "is an intelligent individual who would benefit from . . . education and any vocational training that is available." PSR, ¶ 105. Defendant intends to educate himself while incarcerated and make himself a better person so that he can be a productive person when he is released and start a new life. *See id.*, Letter from Luis Santiago. By reducing his sentence, the Court will

---

[2] Defendant elects to proceed with resentencing.

7

facilitate Defendant's opportunities to rehabilitate himself, and provide the weight entitled to factors other than the Guideline recommendation.

Due to the Guidelines, Defendant's military service also did not receive the consideration that it deserved. *See* U.S.S.G. §5H1.11 ("Military . . . service . . . [is] not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."). More than ten years of service represents a significant part of Defendant's life – he was just 32 years old at sentencing. *See* PSR, ¶ 86. It should have been considered under a post-*Booker* analysis, and supports a reduction in his sentence.

### C. Defendant's Drug Addiction Would Have Been a Factor

With the exception of considerations regarding supervised release and probation, the Guidelines specifically precluded considering Defendant's drug history. See U.S.S.G. § 5H1.4 ("Drug or alcohol dependence or abuse is not a reason for imposing a sentence below the guidelines. Substance abuse is highly correlated to an increased propensity to commit crime." (emphasis added)). Section 3553(a), however, includes this issue. *See* 18 U.S.C. 3553(a)(1) and (2)(D) (requiring consideration of "history and characteristics of the defendant" and need to "provide the defendant with needed . . . medical care . . . in the most effective manner"). Given Defendant's drug history, this issue, too, warrants resentencing at a lesser sentence that will enable him to more quickly obtain a level of incarceration that provides for greater drug treatment and counseling services.

### D. The Absence of Defendant's Father During Defendant's Life Would Have Been Considered

The Guidelines also precluded consideration of the impact on Defendant of his father's absence during his life. *See* U.S.S.G. § 5H1.12 ("Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for

8

imposing a sentence outside the applicable guideline range.).  When Defendant was just about one year old, his father went to prison.  PSR, ¶ 74.  He visited with his father only a few times between the ages of 16 and 21.  *Id*.  Even now, Defendant is uncertain of his father's whereabouts, believing that he lives in upstate New York.  *Id*.  These facts are critical to Defendant's history and should have been considered by the Court under 18 U.S.C. § 3553(a).

### E.  Defendant's Agreement Not to Oppose Forfeiture Proceedings Would Have Received Consideration

Under the Guideline regime, the courts typically did not give defendants credit for restitution made post-arrest.  *See, e.g.*, *United State v. Carpenter*, 320 F.3d 324, 343 (2003) (analyzing whether pre-conviction restitution is basis for departure under Guidelines).  The need to provide restitution is, however, a specific factor under 18 U.S.C. § 3553(a), and one that Defendant facilitated following his arrest.  Defendant agreed not to oppose forfeiture proceedings concerning numerous assets, including two accounts with Morgan Stanley Dean Witter, three vehicles, a Harley Davidson motorcycle, four ATV's, jewelry, and a race car motor.  PSR, ¶ 5.  These facts should have been considered as well.  Even if not enough to merit resentencing on its own, this factor in total with the other factors should have lead to a lesser sentence had the proceedings been held in a post-*Booker* world.  *See, e.g.*, *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court to schedule a resentencing hearing and resentence him under the principles set out in *United States v. Booker*, 125 S.Ct 738 (2005) and United States Code § 3553 (a).

>Respectfully Submitted,
>
>LUIS SANTIAGO,
>The Defendant
>
>
>_____
>Charles F. Willson (# ct24129)
>NEVINS & NEVINS LLP
>102 Connecticut Boulevard
>P. O. Box 280658
>East Hartford, CT 06128
>Tel:    (860) 289-4455
>fax:    860-289-8968
>email:  cwillson@nevinslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid, on July 15, 2005, to

Counsel for the United States
Raymond F. Miller
Assistant U.S. Attorney
U.S. Attorney's Office
157 Church Street
23rd Floor
New Haven, CT  06510


_____
Charles F. Willson